IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MANUEL MENDOZA, MATHEW | ) | CV NO. 5:13-CV-378-DAE |
| MENDOZA, JOHN SWEENEY, | ) | |
| FRANK ORTEGA, DEZRA | ) | |
| GUTHRIE, KALEB MCKIBBEN, | ) | |
| and others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICROSOFT, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

ORDER: (1) DENYING PLAINTIFFS' MOTIONS TO STRIKE DEFENDANT'S
NOTICES OF SUPPLEMENTAL AUTHORITY (2) DENYING DEFENDANT'S
MOTION TO DISMISS AS MOOT; (3) GRANTING DEFENDANT'S MOTION
TO TRANSFER VENUE TO THE WESTERN DISTRICT OF WASHINGTON

　　　　　　Before the Court are three pending motions: a Motion to Dismiss, or

in the alternative, Motion to Transfer Venue to the Western District of Washington

filed by Defendant Microsoft Corporation ("Defendant" or "Microsoft") (Dkt. # 3)

and two Motions to Strike Defendant's Notices of Supplemental Authority filed by

Plaintiffs Manuel Mendoza, Mathew Mendoza, John Sweeney, Frank Ortega,

Dezra Guthrie, and Kaleb McKibben ("Plaintiffs") (Dkt. # 17; Dkt. # 21).  The

Court held a hearing on March 4, 2014.  Omar W. Rosales, Esq. represented

1

Plaintiffs; Thomas G. Yoxall, Esq. represented Defendant.  Upon careful analysis

of the supporting and opposing memoranda, as well as the arguments presented at

the hearing, the Court **DENIES** Plaintiffs' Motions to Strike Defendant's Notices

of Supplemental Authority; **DENIES AS MOOT** Defendant's Motion to Dismiss;

and **GRANTS** Defendant's Motion to Transfer Venue to the Western District of

Washington.

<u>BACKGROUND</u>

Defendant Microsoft owns and operates a well-known gaming portal

called Xbox LIVE, which provides streaming video via internet access, online

gaming services, online video rental services, and online video services.

("Compl.," Dkt. # 1 ¶ 2.)  Defendant Microsoft is incorporated in Washington state

and has a principal place of business in Redmond, King County, Washington.  (<u>Id.</u>

¶ 17.)  Plaintiffs are six individuals that were previous subscribers of Xbox LIVE's

service.  (<u>Id.</u> ¶¶ 55–60.)  They reside in California, Oregon, Florida, Ohio, and

Texas.[1]  (<u>Id.</u>  ¶¶ 11–16.)

Plaintiffs admit that they entered into contracts with Defendant

Microsoft when they subscribed to its Xbox LIVE service.  (<u>Id.</u> ¶¶ 1, 29–35, 55–

---

[1] Plaintiff Frank Ortega lives in California (Compl. ¶ 14); Plaintiff Dezra Gurthrie
lives in Oregon (<u>id.</u> ¶ 15); Plaintiff John Sweeney lives in Florida (<u>id.</u> ¶ 13);
Plaintiff Kaleb McKibben resides in Ohio (<u>id.</u> ¶ 16); and Plaintiffs Mathew and
Manuel Mendoza live in La Porte, Texas, which is located in the Southern District
of Texas (<u>id.</u> ¶ 11–12; "Yoxall Decl.," Dkt. # 4, Ex. B ¶ 3).

60, 97–98.)  Before entering into their respective contracts with Microsoft, they

were given an opportunity to review Xbox LIVE's "Terms of Use."  (See "Coon

Decl.," Dkt. # 4, Ex. A ¶ 5.)[2]  The Terms of Use provide, in pertinent part:

> **1.   This is a Contract between You and Microsoft.**
>
> . . . .
>
> **18. Choice of Law and Location for Resolving Disputes**
>
> If this contract is with Microsoft Corporation, then claims for breach
> of contract will be subject to the laws of the State of Washington,
> without reference to conflict of laws principles.  If this contract is with
> a Microsoft affiliate, claims for breach of contract will be subject to
> the laws of the place of incorporation for such Microsoft affiliate,
> without reference to conflict of laws principles.  All other claims,
> including claims regarding consumer protection laws, unfair
> competition laws, and in tort, will be subject to the laws of your state
> of residence in the United States, or, if you reside outside the United
> States, under the laws of the country to which we direct your Service.
> If this contract is with Microsoft Corporation, you consent to the
> exclusive jurisdiction and venue of state and federal courts in King
> County, Washington, USA for all disputes relating to this contract or
> the Service.  If this contract is with a Microsoft affiliate, you consent
> to the exclusive jurisdiction and venue of the courts located in the
> place of incorporation for such Microsoft affiliate for all disputes
> relating to this contract or the Service.  You cannot revoke this
> consent.

---

[2] In considering motions to transfer venue, a court can rely on undisputed facts
presented to the court "by affidavit, deposition, stipulation, or other relevant
documents."  Midwest Precision Servs., Inc. v. PTM Indus. Corp., 574 F. Supp.
657, 659 (N.D. Ill. 1983); accord Cooper v. Farmers New Century Ins. Co., 593 F.
Supp. 2d 14, 18–19 (D.D.C. 2008).

(Dkt. # 4, Ex. A-1 ¶¶ 1, 18 (emphasis added).)[3]   After being presented with these Terms of Use, Plaintiffs accepted them by clicking "ACCEPT" on the screen.[4]

Sometime before May 2012, Plaintiffs canceled their Xbox LIVE subscriptions. (Compl. ¶¶ 55–60.) According to Plaintiffs, after they canceled their subscriptions, Microsoft unlawfully retained and disclosed their personal information. (Id. ¶ 1.) They make three claims regarding their canceled subscriptions.

First, they allege that Microsoft retained their names, addresses, credit card information, billing addresses, usernames, passwords, and video programming histories for at least two years after they canceled their respective Xbox LIVE accounts. (Id. ¶ 6.) Plaintiffs also claim that Microsoft improperly stored their consumer information overseas where it is supposedly more vulnerable to a

---

[3] Although Plaintiffs admit that they entered into contracts with Defendant Microsoft when they subscribed to Microsoft's Xbox LIVE service, they do not specify when they entered into such contracts. However, Defendant affirms that since the inception of Xbox LIVE's launch in 2002, the Xbox LIVE Terms of Use "contain essentially the same forum-selection clause specifying the exclusive jurisdiction and venue of state or federal courts in King County, Washington, for all lawsuits relating to the Xbox LIVE Terms of Use or the Xbox LIVE service." (Mot. at 4.)

[4] Plaintiffs would not have been able to use the Xbox LIVE service until they accepted the Terms of Use by selecting "ACCEPT" on the screen that displays the Terms of Use. (See Dkt. # 4, Ex. A-1 ¶ 1 ("If you do not agree to this contract, in its entirety, or if you were a party to a prior version of this contract and do not agree to waive the notice requirement, you must select "DECLINE" and discontinue your registration and you will have no right to use the Service."); Coon Decl. ¶ 5.)

security breach.  (Id. ¶ 37.)

Second, Plaintiffs allege that Microsoft used their personal information unlawfully: by disclosing and selling it for profit to data mining companies, by using it for advertising and marketing, by sharing it with vendors, and using it to populate Microsoft's search engine, "Bing."  (Id. ¶¶ 8–9.)

Third, Plaintiffs contend that Microsoft's privacy policy is "unclear" and "located piecemeal in various sections of its corporate website and hidden in a third-level webpage not usually seen by consumers."  (Id. ¶¶ 29–36.)

Plaintiffs seek relief under the following statutes: (1) the Video Privacy Protection Act, 18 U.S.C. § 2710; (2) California's Customer Records Act, Cal. Civ. Code § 1798.80; (3) California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200; and (4) Texas's Deceptive Trade Practices Act, Tex. Bus. & Comm. Code § 17.46(b)(12).  (Id. ¶¶ 69–96.)

Shortly after receipt of Plaintiffs' Complaint, Defendant filed the instant Motion to Dismiss Pursuant to 28 U.S.C. § 1406(a) and Federal Rule of Civil Procedure 12(b)(3), (6) or, in the alternative, to Transfer Venue to the Western District of Washington Pursuant to 28 U.S.C. § 1406(a) or 28 U.S.C. § 1404(a) ("Motion").  ("Mot.," Dkt. # 3.)  Plaintiffs filed a Response opposing any transfer of venue.  ("Resp.," Dkt. # 6.)  Defendant filed a Reply.  ("Reply," Dkt. # 9.)

5

On December 16, 2013, Defendant filed a Notice of Supplemental Authority bringing to the Court's attention a recent case from the United States Supreme Court, <u>Atlantic Marine Construction Co. v. United States District Court for the Western District of Texas</u>, 134 S. Ct. 568 (2013), which had reversed the Fifth Circuit's enforcement of forum-selection clauses.  ("Supp. Br.," Dkt. # 16.) In response, Plaintiffs filed a Motion to Strike Defendant's Supplemental Brief, (Dkt. # 17), to which Defendant filed a Response (Dkt. # 18).  Shortly before the hearing, Defendant filed another Notice of Supplemental Authority identifying recent district court opinions discussing the Supreme Court's decision in <u>Atlantic Marine</u>.  (Dkt. # 20.)  Plaintiffs responded with another Motion to Strike asserting the same arguments as their previous Motion to Strike.  (Dkt. # 21.)

DISCUSSION

I.     <u>Plaintiffs' Motions to Strike Defendant's Notices of Supplemental Authority</u>

As a preliminary matter, the Court will first address Plaintiffs' arguments that Defendant improperly filed its Notices of Supplemental Authority. Defendant's supplemental briefing to the Court addresses the merits of the Supreme Court's <u>Atlantic Marine</u> decision and its effect on the enforcement of forum-selection clauses in cases involving motions to dismiss for improper venue and motions to transfer venue.  In light of the <u>Atlantic Marine</u> holding, Defendant's Supplement withdraws its dismissal argument under Rule 12(b)(3) and 28 U.S.C.

6

§ 1406(a) and exclusively asks this Court to transfer the case to the Western District of Washington under 28 U.S.C. § 1404(a).  (See Supp. Br. at 6 ("In light of Atlantic Marine's holding that Rule 12(b)(3) and § 1406(a) are improper mechanisms to enforce a forum selection clause, the Court should not dismiss this lawsuit under Rule 12(b)(3) or § 1406(a).  Rather, the Court should grant Microsoft's alternative motion to transfer it under § 1404(a)." (citations omitted)).)

Plaintiffs aver that Defendant should have filed a "Motion for Leave to Supplement" pursuant to Federal Rule of Civil Procedure 15(d).  That rule governs supplementing pleadings, and provides:

> On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented.  The court may permit supplementation even though the original pleading is defective in stating a claim or defense.  The court may order that the opposing party plead to the supplemental pleading within a specified time.

Fed. R. Civ. P. 15(d).  By its very terms, Rule 15(d) applies exclusively to pleadings asserting claims or defenses—not motions in general.  See "Pleading," Black's Law Dictionary (9th ed. 2009) ("A formal document in which a party to a legal proceeding (esp. a civil lawsuit) sets forth or responds to allegations, claims, denials, or defenses.  In federal civil procedure, the main pleadings are the plaintiff's complaint and the defendant's answer.").  As such, Plaintiffs' reliance on Rule 15(d) is misplaced.

7

Other federal districts in Texas do prescribe local rules that prohibit supplemental briefs or authorities without permission of the presiding judge. See N.D. Tex. Civ. R. 56.7 ("Except for the motions, responses, replies, briefs, and appendixes required by these rules, a party may not, without the permission of the presiding judge, file supplemental pleadings, briefs, authorities, or evidence."); accord Bankr. N.D. Tex. R. 7056-1(g) (same). However, the Western District of Texas has no specific such prohibition for supplemental briefing. The Western District Local rules only prohibit surreplies. See W.D. Tex. Civ. R. 7(f)(1) ("Replies. A party may file a reply in support of a motion. Absent leave of the court, no further submissions on the motion are allowed.").

Furthermore, it is likely that the ethical rules prompted Defendant to file its supplemental briefing. Defendant's first Notice of Supplemental Authority removes its Motion to Dismiss because of the Atlantic Marine decision—arguably a position contrary to Defendant's earlier position in its original Motion. Texas Disciplinary Rule of Professional Conduct 3.03(a)(4) suggests that Defendant had an obligation to inform the Court of controlling authority contrary to its position. See Tex. Disciplinary R. Prof'l Conduct 3.03(a)(4) (providing that a lawyer shall not knowingly "fail to disclose to the tribunal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel"). Striking Defendant's Notices of

8

Supplemental Authority would discourage future parties from apprising courts of changes to applicable and controlling authorities—surely a perverse result.  See Sisk v. Abbott Labs., 1:11CV159, 2012 WL 1164559, at *1 (W.D.N.C. Apr. 9, 2012) ("[A] notice of supplemental authority [is] commonly used in the federal court system to alert the Court to a decision of another court issued after the close of the briefing period. . . . To suggest that a party may not file such a notice and inform the Court of subsequent authority is nonsensical."); Hornor, Townsend & Kent, Inc. v. Hamilton, CIV.A.1:01 CV 2979 J, 2004 WL 2284503, at *11 (N.D. Ga. Sept. 30, 2004) ("[F]iling notices of supplemental authorities that come to a party's attention after briefing is complete is a well-established practice . . . [and] such practice is helpful to the Court, which of course always endeavors to apply current authority in resolving the issues before it.").

In any event, the Court finds that even if Defendant should have sought leave of the Court before filing its Notices of Supplemental Authority, striking Defendant's supplemental briefing is unwarranted.  Plaintiffs have not suffered any prejudice due to Defendant's Notices of Supplemental Authority addressing the Atlantic Marine holding.  Defendant's original Motion placed Plaintiffs on notice of Atlantic Marine's pending status in the Supreme Court.  (See Mot. at 10–11.)  Moreover, Plaintiffs primarily used their Motion to Strike to reassert arguments presented in their Response to Defendant's original Motion.

See Hunter v. District of Columbia, 824 F. Supp. 2d 125, 135 n.5 (D.D.C. 2011) (noting that because the plaintiff used his motion to strike the defendants' notice of supplemental authority to clarify the scope of his opposition, the plaintiff "cannot [have] been said to have been prejudiced").

Accordingly, the Court **DENIES** Plaintiffs' Motions to Strike.

II.      Defendant's Motion to Dismiss

Defendant initially argued that this case should be dismissed under 28 U.S.C. § 1406(a) or, in the alternative, transferred under 28 U.S.C. § 1404(a) to the Western District of Washington because Plaintiffs agreed to a valid forum-selection clause in their Xbox LIVE subscription agreements requiring that disputes be brought exclusively in King County, Washington.  (Mot. at 1.)  As noted above, pursuant to Atlantic Marine, Defendant's Supplemental Brief relinquishes its Motion to Dismiss and only asks this Court to transfer the case to the Western District of Washington.  (Supp. Br. at 6.)   Therefore, the Court **DENIES** Defendant's Motion to Dismiss **AS MOOT**.

III.      Defendant's Motion to Transfer Venue

Pursuant to § 1404(a), Defendant Microsoft seeks to transfer this case to the United States District Court for the Western District of Washington in accordance with the forum-selection clause in the agreed-to Xbox LIVE Terms of Use.  The instant Motion to Transfer affords this Court the opportunity to apply the

United States Supreme Court's recent decision in <u>Atlantic Marine Construction Co., Inc. v. United States District Court for Western District of Texas</u>, 134 S. Ct. 568 (2013), which outlines the proper analysis this Court should undertake in evaluating a § 1404 motion to transfer venue when a valid forum-selection clause exists between the parties.

But before addressing the <u>Atlantic Marine</u> decision, the Court must first determine whether the forum-selection clause in the Xbox LIVE Terms of Use is a contractually valid forum-selection clause.  See <u>Atl. Marine Constr. Co.</u>, 134 S. Ct. at 581 n.5 (noting that a motion to transfer venue pursuant to a forum-selection clause presupposes a contractually valid forum-selection clause).

A.    <u>Existence of Contractually Valid Forum-Selection Clause</u>

Whether a forum-selection clause applies to the present case involves two separate inquiries: (1) whether the forum-selection clause is enforceable, and (2) whether the present case falls within the scope of the forum-selection clause. <u>Brown v. Federated Capital Corp.</u>, --- F. Supp. 2d ----, 2014 WL 97292, at *2 (S.D. Tex. Jan. 6, 2014) (citing <u>Stinger v. Chase Bank, USA, NA</u>, 265 F. App'x 224, 226–27 (5th Cir. 2008) (evaluating whether to apply a contract provision mandating arbitration by assessing (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement); <u>Braspetro Oil Servs. Co. v. Modec (USA),</u>

11

Inc., 240 F. App'x 612, 616 (5th Cir. 2007) (enforcing a forum-selection clause

requires first assessing the clause's contractually validity and its scope)).

      1.    Enforceability of Forum-Selection Clause

      The Fifth Circuit holds that federal law applies to determine the

enforceability of forum-selection clauses in both diversity and federal question

cases.  Braspetro Oil Servs. Co., 240 F. App'x at 615 (citing Haynsworth v. The

Corp., 121 F.3d 956, 962 (5th Cir. 1997)); see also Ginter ex rel. Ballard v.

Belcher, Prendergast & Laporte, 536 F.3d 439, 441 (5th Cir. 2008) (enforcement of

forum-selection clause depends on federal law).  According to federal law, "such

clauses 'are prima facie valid and should be enforced unless enforcement is shown

by the resisting party to be unreasonable under the circumstances.'"  Braspetro Oil

Servs. Co., 240 F. App'x at 615 (quoting M/S Bremen v. Zapata Off-Shore Co.

("The Bremen"), 407 U.S. 1, 10 (1972)); accord Ginter, 536 F.3d at 441.

      In Haynsworth, the Fifth Circuit provided a list of four factors to

determine whether a forum-selection clause may be considered unreasonable:

> (1) the incorporation of the forum selection clause into the agreement
> was the product of fraud or overreaching; (2) the party seeking to
> escape enforcement "will for all practical purposes be deprived of his
> day in court" because of the grave inconvenience or unfairness of the
> selected forum; (3) the fundamental unfairness of the chosen law will
> deprive the plaintiff of a remedy; or (4) enforcement of the forum
> selection clause would contravene a strong public policy of the forum
> state.

121 F.3d at 963.  The party resisting the forum-selection clause's enforcement on

these grounds bears a "heavy burden of proof." Id. (quoting The Bremen, 407 U.S.

at 17).

> a.      Incorporation of the Forum-Selection Clause Was Not
> the Product of Fraud or Overreaching

"[U]nreasonable fraud or overreaching does not mean that any time a

dispute arising out of a transaction is based upon an allegation of fraud[,] . . . the

clause is unenforceable." Id. (quoting Scherk v. Alberto-Culver Co., 417 U.S.

506, 519 n.14 (1974)).  "Rather, it means that an arbitration or forum-selection

clause in a contract is not enforceable if the inclusion of that clause in the contract

was the product of fraud or coercion." Id.  "Allegations of such [fraudulent]

conduct as to the contract as a whole—or portions of it other than the [forum-

selection] clause—are insufficient; the claims of fraud or overreaching must be

aimed straight at the [forum-selection] clause in order to succeed." Id.

Plaintiffs do not argue that the forum-selection clause was the product

of fraud or overreaching.  Instead, they contend that the forum-selection clause

should not be enforced because it was not reasonably communicated to them prior

to commencing their subscription with Microsoft's Xbox LIVE Service.  (Resp. at

10.)  The assert that the clause "is buried in a 13-page contract, in 4-point font, and

is not highlighted nor distinguished from any other portions of the contract.  These

venue provisions are not easy to read, are not highlighted, nor are they displayed

prominently."  (Id.)

Plaintiffs first rely on <u>Carnival Cruise Lines, Inc. v. Shute</u>, 499 U.S. 585 (1991).  However, the Court has searched in vain for any passage from <u>Carnival Cruise Lines</u> requiring that a forum-selection clause be reasonably communicated.  In fact, the Supreme Court did not address such a question:

> Second, we do not address the question whether respondents had sufficient notice of the forum clause before entering the contract for passage.  Respondents essentially have conceded that they had notice of the forum-selection provision.  Brief for Respondents 26 ("The respondents do not contest the incorporation of the provisions nor [sic] that the forum selection clause was reasonably communicated to the respondents, as much as three pages of fine print can be communicated").

499 U.S. at 590.

Additionally, Plaintiffs rely on <u>O'Brien v. Okemo Mountain, Inc.</u>, 17 F. Supp. 2d 98 (D. Conn. 1998), wherein a district court held that a forum-selection clause was not enforceable because it was printed on the back of a ski-lift ticket in small letters and was not reasonably communicated to the plaintiffs.  (<u>Id.</u> at 10–11.)  But Plaintiffs' reliance <u>O'Brien</u> is similarly misplaced because the Fifth Circuit—unlike the Second Circuit—does not require that a forum-selection clause be reasonably communicated; rather, the Fifth Circuit holds that forum-selection clauses are "presumed enforceable" and should be upheld unless the party opposing its enforcement can show that the clause was unreasonable under <u>Haynsworth</u>'s four factors.  <u>Compare O'Brien</u>, 17 F. Supp. 2d at 103 ("[T]he validity of a forum selection clause in an adhesion contract depends on whether the

existence of the clause was reasonably communicated to the plaintiff." (citing

Effron v. Sun Line Cruises, 67 F.3d 7, 9 (2d Cir. 1995))); with Ginter, 536 F.3d at

441 ("[T]he forum-selection clause should be upheld unless the party opposing its

enforcement can show that the clause is unreasonable.  The clause might be

unreasonable when, among other things, its inclusion is the product of

'overreaching' or when its enforcement would 'contravene a strong public policy

of the forum state.'" (quoting Haynsworth, 121 F.3d at 963)); Braspetro Oil Servs.

Co., 240 F. App'x at 615 (holding that forum-selection clauses "should be

enforced" unless enforcement would be unreasonable under the circumstances

outlined in Haynsworth).

        But even assuming Plaintiffs' reasonably communicated theory,

O'Brien is easily distinguishable because that case involved a ski-lift ticket with a

forum-selection clause printed on the back of the ticket.  In O'Brien, the district

court emphasized that the forum-selection clause was not reasonably

communicated because

> [t]he clause, placed near the bottom of the backside of the ticket, is
> written in very small typeface with only a single word capitalized.
> The front of the ticket contains no instruction to read its back.  These
> features, coupled with the affixing of the ticket on a wicket on the
> skier's jacket, easily distinguish it from clauses contained in passenger
> cruise tickets and approved by courts in this Circuit as providing
> adequate notice.

17 F. Supp. 2d at 103.  Here, in contrast, the opening lines to Xbox LIVE's Terms

of Use read, in bold: "**This Is a Contract between You and Microsoft**."  (Dkt.

# 4, Ex. A-1 ¶ 1.)  Unlike a ski-lift ticket, which by itself does not suggest a

binding contract with a forum-selection clause embedded within, the Xbox LIVE

Terms of Use explicitly and expressly tell subscribers, like Plaintiffs, that

subscribing to the Service results in a binding contract with certain terms of use as

specified by Microsoft.  Also unlike a ski-lift ticket, subscribers, like Plaintiffs, are

required to review the Terms of Use <u>prior to</u> subscribing to the Service.  In fact, the

Xbox LIVE registration does not allow consumers to access the Service unless

they affirmatively assent to the Terms of Use.  (<u>See</u> Coon Decl. ¶ 5 ("Before

subscribers are able to access or use the Xbox LIVE service, they must enter into a

contract with Microsoft under which they agree to be bound by the Xbox LIVE

TOUs."); <u>see also</u> Dkt. # 4, Ex. A-1 ¶ 1 ("If you do not agree to this contract, in its

entirety . . . you must select "DECLINE" and discontinue your registration, and

you will have no right to use the Service.").)

      Moreover, although Plaintiff takes issue with the clause's lack of

bolding and highlighting and characterizes the text as font size 4, a forum-selection

clause "need not be so conspicuous."  <u>Doe v. Cultural Care, Inc.</u>, 09-CV-6126,

2010 WL 3075711, at *4 (N.D. Ill. Aug. 3, 2010).  Indeed, while a clause "buried

in illegible fine print" may be unenforceable, one that can be comfortably read will

be considered valid, even if the font size is quite small.  <u>See</u> <u>Nw. Nat. Ins. v.</u>

Donovan, 916 F.2d 372, 377 (7th Cir. 1990) (noting, despite "heavily corrected middle-aged eyesight," that Judge Posner could still make out the forum selection clause, even though the print was small and provided to the court in pale, underexposed photocopies). The photocopy of Xbox LIVE's Terms of Use that Plaintiffs tendered to the Court does not contain text that is a size 4 font. (See Dkt. # 6, Ex. 3.) Quite the contrary—the font size of the Xbox LIVE Terms of Use is only slightly smaller than that used by Plaintiffs in their briefing. Although the Court agrees that Microsoft could have more prominently displayed the forum-selection clause to the subscriber, the text is entirely legible and can be comfortably read.

Because Plaintiffs have not demonstrated that the forum-selection clause itself was the product of fraud or overreaching, the Court concludes that the first Haynsworth factor weighs in favor of enforcing the forum-selection clause.

> b.    Enforcement of the Forum-Selection Clause Would Not Deprive Plaintiffs of Their Day in Court

Given that any inconvenience of the forum was foreseeable at the time of contracting, The Bremen, 407 U.S. at 17, to invalidate a forum-selection clause predicated on the "grave inconvenience" or "fundamental unfairness" of a preselected forum, Plaintiffs must demonstrate they will "for all practical purposes be deprived of [their] day in court." Haynsworth, 121 F.3d at 963.

Plaintiffs do not argue that litigating this claim in Washington will be

17

an inconvenient forum, much less deprive them of their day in court. Rather,

Plaintiffs discuss how it is "very convenient" for them to litigate this claim the

Western District of Texas and how Plaintiffs' counsel "can easily make court

hearings in the Western District of Texas." (Resp. at 23.) Plaintiffs also devote

extensive briefing to the "Goliath"-like bargaining power of Microsoft, recounting

Defendant's "virtually limitless resources" and "thousands of attorneys at its

disposal"—factors that are irrelevant for purposes of the enforcement of a forum-

selection clause under Haynsworth. (Id. at 20, 23.) In the absence of any evidence

that litigating this claim would be substantially burdensome (as opposed to "very

convenient") for Plaintiffs, the Court finds that this factor weighs in favor of

enforcing the forum-selection clause. See Pugh v. Arrow Elecs., Inc., 304 F. Supp.

2d 890, 896 (N.D. Tex. 2003) (granting transfer based on forum-selection clause

when the plaintiff failed to present convincing evidence that costs were so grave or

unfair to deprive him of his day in court).

c.    <u>Chosen Law is Not Fundamentally Unfair</u>

In addition to the forum-selection clause, the Xbox LIVE Terms of

Use contain two choice-of-law clauses. The first clause specifies that claims for

breach of contract "will be subject to the laws of the State of Washington, without

reference to conflict of law principles." (Dkt. # 4, Ex. A-1 ¶ 18.) The second

clause provides that other than claims for breach of contract, "[a]ll other claims,

18

including claims regarding consumer protection laws, unfair competition laws, and in tort, will be subject to the laws of [the plaintiff's] state of residence in the United States." (Id.)  Accordingly, the laws of Washington govern any contractual disputes Plaintiffs assert, and the law of each Plaintiff's home state governs each Plaintiff's non-contractual claims alleged in the Complaint.  Transferring venue pursuant to the forum-selection clause will not affect the choice-of-law provision already specified in the Xbox LIVE Terms of Use.  Therefore, the third Haynsworth factor is irrelevant to the determination of whether the forum-selection clause is unreasonable.

However, the Court takes a moment to address Plaintiffs' concern that the forum-selection clause is "ambiguous and confusing" and "creates dichotomies." (Resp. at 11.)  In their Response, Plaintiffs recite a portion of the contract and then posit a series of rhetorical questions, presumably to argue that the forum-selection clause is unreasonable:

Defendant's contract reads:

If this contract is with Microsoft Corporation, then claims for breach of this contract will be subject to the laws of the State of Washington, without reference to the conflict of laws principles.  All other claims, including claims regarding consumer protection laws, unfair competition laws, and in tort, will be subject to the laws of your state of residence in the United States.

So, if a consumer has a claim under Hawaii law, will a Washington State Court litigate that claim, using Hawaii law?  Or, if a consumer

has a claim under the California Unfair Competition Law, will the
Washington State Court litigate that claim, using California law?

(Id.)

Plaintiffs misunderstand the difference between the forum-selection
clause specifying a particular venue for a lawsuit and a choice-of-law clause
specifying which jurisdiction's laws apply to a given claim.  Compare "Forum-
Selection Clause," Black's Law Dictionary (9th ed. 2009) ("A contractual
provision in which the parties establish the place (such as the country, state, or type
of court) for specified litigation between them." (emphasis added)), with "Choice-
of-Law Clause," Black's Law Dictionary (9th ed. 2009) ("A contractual provision
by which the parties designate the jurisdiction whose law will govern any disputes
that may arise between the parties." (emphasis added)).  And, in response to
Plaintiffs' questions, a federal court sitting in Washington can adjudicate claims
using Hawaii or California law and often do just that.  See Atl. Marine Constr. Co.,
134 S. Ct. at 584 ("[F]ederal judges routinely apply the law of a State other than
the State in which they sit.").

          d.      Public Policy

Plaintiffs do not point to any Texas public policy advocating retaining
the instant action.  Rather, Plaintiffs assert that "[p]rivacy and illegal data
collection are an important interest [sic] in a populated area such as the Western
District of Texas."  (Resp. at 24.)   While respecting privacy and guarding against

20

illegal data collection are indeed interests of this Court, it is by no means unique to the Western District of Texas.

Moreover, Plaintiffs purport to bring a nationwide class action, with class members located not just in Texas, but across the United States. Indeed, only two of the six named Plaintiffs reside in Texas; and of those two, neither reside in the Western District of Texas. (<u>See</u> Compl. ¶¶ 11–16; <u>see also</u> Yoxall Decl. ¶ 3.[5]) Thus, the Western District of Texas does not have a strong local interest in this dispute.

Having assessed the four reasonableness-factors as outlined in <u>Haynsworth</u>, 121 F.3d at 963, the Court finds that the forum-selection clause in the Xbox LIVE Terms of Use is valid and enforceable.

2. <u>Scope of the Forum-Selection Clause</u>

To determine whether the forum-selection clause applies to the type of claims asserted in the lawsuit, courts "look to the language of the parties' contract to determine which causes of action are governed by the forum selection clause . . . ." <u>Marinechance Shipping, Ltd. v. Sebastian</u>, 143 F.3d 216, 222 (5th Cir. 1998). "If the substance of the plaintiff's claims, stripped of their labels, does

---

[5] According to the Yoxall Declaration, Plaintiffs Mathew and Manuel Mendoza reside in La Porte, Texas, Harris County, which is located within the Southern District of Texas. <u>See</u> "Addresses, Houston Division," United States District & Bankruptcy Courts, Southern District of Texas, available at http://www.txs.uscourts.gov/addresses/hou.pdf (including Harris county in the Houston Division of the Southern District of Texas).

not fall within the scope of the forum selection clause, the clause cannot apply."

<u>Id.</u>

The forum-selection clause in the Xbox LIVE Terms of Use provides:

> If this contract is with Microsoft Corporation, you consent to the exclusive jurisdiction and venue of state and federal courts in King County, Washington, USA for all disputes <u>relating to this contract or the Service</u>.

(Dkt. # 4, Ex. A-1 ¶ 18 (emphasis added).)  As such, if the dispute is related to the contract, or related to the Service, the dispute is within the scope of the forum-selection clause, and then that clause controls the venue-transfer inquiry.

Plaintiffs argue that the forum-selection clause in the Xbox LIVE Terms of Use does not cover the instant action because Plaintiffs allege violations of federal law and the clause fails to address non-contractual disputes and disputes regarding federal law.  (Resp. at 16.)

Plaintiffs' argument that their causes of action are exempt from the forum-selection clause's reach because their claims are non-contractual in nature is likely the product of their limited reading of the clause's text.  In their Response to Defendant's Motion, Plaintiffs proffered that the clause read: "If this contract is with Microsoft Corporation, you consent to the exclusive jurisdiction and venue of state and federal courts in King County, Washington, USA <u>for all disputes relating to this contract</u>."  (<u>Id.</u> at 17 (quoting Dkt. # 6, Ex. 3 ¶ 18).)  However, contrary to Plaintiffs' abbreviated reading, the forum-selection clause covers non-contractual

disputes as it provides <u>in full</u>: "If this contract is with Microsoft Corporation, you consent to the exclusive jurisdiction and venue of state and federal courts in King County, Washington, USA for all disputes relating to this contract <u>or the Service</u>." (Dkt. # 4, Ex. A-1 ¶ 18 (emphasis added).)  As such, because the forum-selection clause includes disputes relating to the Xbox LIVE Service, the forum-selection clause is not solely limited to contractual claims.

In any event, the forum-selection clause covers all disputes <u>related to</u> either the contract or the Xbox LIVE Service, and the term "related to" is typically defined more broadly while not being necessarily tied to the concept of a causal connection.  Webster's Dictionary defines "related" simply as "connected by reason of an established or discoverable relation."  Webster's Third New International Dictionary 1916 (1986).  As the "related" definition would suggest, forum-selection clauses covering claims "relating to" an agreement are broad in scope.  <u>TGI Friday's Inc. v. Great Nw. Restaurants, Inc.</u>, 652 F. Supp. 2d 750, 759 (N.D. Tex. 2009) (citing <u>MaxEn Capital, LLC v. Sutherland</u>, H-08-3590, 2009 WL 936895, at *6 (S.D. Tex. Apr. 3, 2009) ("Such clauses are broad, encompassing all claims that have some possible relationship with the contract, including claims that may only 'relate to' the contract."); <u>Smith v. Lucent Techs., Inc.</u>, 2004 WL 515769, at *8 (E.D. La. Mar. 16, 2004) ("The term 'related to' is typically defined more broadly and is not necessarily tied to the concept of a causal connection."));

c.f. <u>Prima Paint Corp. v. Flood & Conklin Mfg. Co.</u>, 388 U.S. 395, 397–98 (1967) (labeling as "broad" a clause requiring arbitration of "[a]ny controversy or claim arising out of or relating to this Agreement").

The Court finds that the forum-selection clause encompasses Plaintiffs' claims—be they federal claims or not—because they relate to the contract.  Indeed, Plaintiffs' Complaint extensively recounts portions of the Xbox LIVE Terms of Use (i.e., the contract), which include Microsoft's Privacy Policy, to illustrate Defendant Microsoft's alleged privacy infractions.  (<u>Id.</u> ¶¶ 29–33, 40.) Plaintiffs affirm: "<u>By its own terms and policy</u>, Microsoft admits that it collects purchasing and decisions [sic] on videos and movies made by customers on its X-Box Live gaming system."  (<u>Id.</u> ¶ 34 (emphasis added).)  Plainly, Plaintiffs' causes of action derive from a dispute about the privacy policies contained in the contract.

But even if Plaintiffs' claims were not related to the contract, at a minimum, Plaintiffs' claims are essentially "disputes relating to . . . the Service." (Dkt. # 4, Ex. A-1 ¶ 18.)  Plaintiffs assert claims for violations of the Video Privacy and Protection Act, California's Customer Records Act, California's Unfair Competition Law, and Texas's Deceptive Trade Practices Act.  The basis for all of Plaintiffs' claims is that Defendant Microsoft retained, stored, and utilized their order history and billing information for at least two years after they

24

canceled their subscriptions to the Xbox LIVE Service and that this information was then sold by Defendant Microsoft to data-mining companies for profit. (Compl. ¶¶ 4–8.)  All of Plaintiffs' claims relate to the manner in which Defendant Microsoft handles personal data under the Xbox LIVE Service, which comes within the scope of the forum-selection clause's "related-to" provision.

Accordingly, because the forum-selection clause is enforceable and Plaintiffs' claims fall within the purview of the forum-selection clause, that clause governs this Court's venue-transfer inquiry under 28 U.S.C. § 1404(a).

B.    Section 1404(a) & Atlantic Marine

In Atlantic Marine, the Supreme Court held that a party may not enforce a forum-selection clause by seeking dismissal of the suit under 28 U.S.C. § 1406(a) and Rule 12(b)(3) because those provisions only apply when venue is "wrong" or "improper," as determined by federal venue law, 28 U.S.C. § 1391. 134 S. Ct. at 577–79.  Rather, a forum-selection clause may be enforced through a motion to transfer under 28 U.S.C. § 1404(a), which "permits transfer to any district where venue is also proper (i.e., 'where [the] case] might have been bought') or to any other district to which the parties have agreed by contract or stipulation."  Id. at 579 (quoting 28 U.S.C. § 1404(a)).  "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause" and a proper application of § 1404(a)

25

requires that a forum-selection clause be "given controlling weight in all but the most exceptional cases." Id. at 581.

In the typical § 1404(a) analysis, the district court weighs the relevant public and private factors and decides whether, on balance, a transfer would serve "the convenience of parties and witnesses" and otherwise promote "the interest of justice." Id. at 581 n.6. The private factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. In re Volkswagon, AG, 371 F.3d 201, 203 (5th Cir. 2004). The public factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or applying the foreign law. Id. A court also gives some weight to the plaintiff's choice of forum. Atl. Marine Constr. Co., 134 S. Ct. at 581 n.6.

However, the usual § 1404(a) calculus changes when the transfer motion is premised on a forum-selection clause. Id. This is primarily because "a forum-selection clause . . . may have figured centrally in the parties' negotiations and may have affected how they set monetary and other contractual terms . . . ."

26

Id. at 583.  In fact, it may "have been a critical factor in their agreement to do business together in the first place."  Id.  As such, "when parties have contracted in advance to litigate disputes in a particular forum," district courts should adjust their usual § 1404(a) analysis in three ways to "not unnecessarily disrupt the parties' settled expectations."  Id. at 582–83.

First, "the plaintiff's choice of forum merits no weight."  Id. at 581.  Although the plaintiff is ordinarily allowed to select whatever forum it considers most advantageous, "when a plaintiff agrees by contract to bring suit only in a specified forum, the plaintiff has effectively exercised its 'venue privilege' before the suit arises."  Id. at 581–82.  As such, only the plaintiff's initial choice—that is, the agreed-to choice memorialized in the contract's forum-selection clause— deserves deference.  Id. at 582.  The plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted.  Id.

Second, a court should not consider arguments about the parties' private interests because when parties agree to a forum-selection clause, they have effectively waived their right to challenge the preselected forum.  Id.  "[A] court must deem the private-interest factors to weigh entirely in favor of the preselected forum" because "'whatever inconvenience [the parties] would suffer by being forced to litigate in the contractual forum as [they] agreed to do was clearly foreseeable at the time of contracting.'"  Id. (quoting The Bremen, 407 U.S. at 17–

27

18).  Instead, a court may only consider arguments about public-interest factors.
Id.  "Because those factors will rarely defeat a transfer motion, the practical result
is that forum-selection clauses should control except in unusual cases."  Id.

Third, "when a party bound by a forum-selection clause flouts its
contractual obligation and files suit in a different forum, a § 1404(a) transfer of
venue will not carry with it the original venue's choice-of-law rules—a factor that
in some circumstances may affect public-interest considerations."  Id.  Rather, the
court in the contractually selected venue should not apply the law of the transferor
venue; instead, it should apply its own law.  Id. at 583.

In sum, Atlantic Marine held that if a contractually valid forum-
selection clause exists and applies to the lawsuit, a court should grant the motion to
transfer in accordance with the forum-selection clause absent extraordinary
circumstances.  Id. at 581.  The party opposing the transfer bears a heavy burden of
establishing that the transfer is unwarranted due to the extraordinary circumstances
as "[i]n all but the most unusual cases," no such circumstances will exist.  Id. at
582–83.

When determining whether extraordinary circumstances exist that
warrant denial of transfer, only the public-interest factors of a traditional § 1404(a)
analysis may be considered, including: (1) the administrative difficulties flowing
from court congestion; (2) the local interest in having localized interests decided at

home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law.  Id. at 581–82.

Plaintiffs only argue that "there are no administrative difficulties that will be placed on the court via this litigation" because "[a]lmost all class action cases are settled prior to trial."  (Resp. at 24.)  They also contend that this Court is "erudite, capable, and qualified to adjudicate the instant dispute" having "previously written very eloquent, precise, and informative opinions."  (Id.)  While the Court appreciates Plaintiffs' assessment of this Court's adjudicative abilities, none of Plaintiffs' arguments demonstrate "most unusual" or "extraordinary" circumstances sufficient to defeat a motion to transfer.  See Atl. Marine Constr. Co., 134 S. Ct. at 575, 581, 583.  At best, Plaintiffs argue that the litigation is better-suited to the Western District of Texas, but under Atlantic Marine, that consideration is irrelevant.  See id. at 575 (holding that "a district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer" (emphasis added)).  Given that Plaintiffs have not met their burden of demonstrating extraordinary circumstances, the Court finds that a transfer of venue is warranted pursuant to the contractually valid forum-selection clause.

C.    Class Action Fairness Act

Alternatively, Plaintiffs argue that the Class Action Fairness Act ("CAFA") preempts the forum-selection clause in the Xbox LIVE Terms of Use and the transfer-venue analysis from Atlantic Marine.  (Resp. at 14–15.)  Plaintiffs contend that because their lawsuit alleges a violation of the Video Privacy Protection Act and that Act does not contain a venue provision, the fallback position reverts to the permissive venue provisions of CAFA.  (Id.)

But CAFA does not specifically designate a particular venue for a class action.  CAFA is only designed to confer diversity jurisdiction over class actions that satisfy certain criteria.  Instead, 28 U.S.C. §§ 1391, 1392, the usual venue statutes for civil actions apply to class action lawsuits brought under CAFA.  See Hawkins v. Gerber Prods. Co., 924 F. Supp. 2d 1208, 1213–14 (S.D. Cal. 2013) (applying 28 U.S.C. § 1391(c) to determine the proper venue for a class action brought under CAFA); Roling v. E*Trade Sec., LLC, 756 F. Supp. 2d 1179, 1185 (N.D. Cal. 2010) (same).

For this reason, courts have held that the CAFA, like other federal statutes subject to the civil venue statutes, does not preempt a valid forum-selection clause.  See Norris v. Commercial Credit Counseling Servs., Inc., 4:09-CV-206, 2010 WL 1379732 (E.D. Tex. Mar. 31, 2010) ("[T]he court declines to adopt the Plaintiffs' assertion that CAFA preempts the contractual forum selection/choice-

30

of-law clause."); accord Guenther v. Crosscheck Inc., No. C 09-01106, 2009 WL 1248107, *5 (N.D. Cal. 2009) ("Although CAFA may otherwise afford this Court jurisdiction, however, CAFA does not trump a valid, enforceable and mandatory forum-selection clause . . . ."); see also Piechur v. Redbox Automated Retail, LLC, No. 09-cv-984-JPG, 2010 WL 706047, at *2–3 (S.D. Ill. Feb 24, 2010) (remanding case to state court due to an enforceable forum-selection clause despite the plaintiffs bringing claims under CAFA).

Accordingly, CAFA does not alter this Court's decision to transfer the instant action to the Western District of Washington pursuant to the contractually valid forum-selection clause contained in the Xbox LIVE Terms of Use.

## CONCLUSION

For the aforementioned reasons, the Court **DENIES** Plaintiffs' Motions to Strike Defendant's Notices of Supplemental Authority (Dkt. # 17; Dkt. # 21); **DENIES AS MOOT** Defendant's Motion to Dismiss (Dkt. # 3); and **GRANTS** Defendant's Motion to Transfer Venue to the Western District of Washington (Dkt. # 3).

IT IS SO ORDERED.

DATED: San Antonio, Texas, March 5, 2014.

_____
David Alan Ezra
Senior United States District Judge

31