UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MANUEL MENDOZA, et. al.,

    Plaintiffs,

v.

MICROSOFT INC,

    Defendant.

CASE NO. 2:14-cv-00316-MJP

ORDER COMPELLING ARBITRATION

This matter comes before the Court on the motion of Microsoft Corporation to compel Plaintiffs Dezra Guthrie and Mathew Mendoza to arbitrate their claims. (Dkt. No. 44.) Having reviewed the motion, Plaintiffs' response (Dkt. No. 52), the reply (Dkt. No. 53), and all related papers, the Court GRANTS the motion and compels arbitration of Ms. Guthrie and Mr. Mendoza's claims.

**Background**

This case concerns Xbox LIVE, an online service provided by Defendant Microsoft, which allows, among other things, users to play online games using the Xbox console. Plaintiffs— Manuel Mendoza, Mathew Mendoza, Kaleb McKibben, Dezra Guthrie, Frank

Ortega, and John Sweeney—are former Xbox LIVE Service subscribers who claim Defendant Microsoft Corporation illegally retains and discloses personally identifiable information. (Dkt. No. 1 at 1-2.) Microsoft moves to compel arbitration of Ms. Guthrie and Mr. Mendoza's claims on the grounds the Terms of Use (TOUs) require them to arbitrate this dispute. (Dkt. No. 44 at 6.)

  A. Xbox LIVE Service Membership and Terms of Use

  Microsoft Xbox LIVE offers two types of membership accounts: (1) Xbox LIVE Silver, a free account; and (2) Xbox LIVE Gold, a paid account providing subscribers with additional features and services. (Dkt. No. 45 at 2.) If a Gold account expires or a subscriber fails to pay, the account is automatically converted to an Xbox LIVE Silver account. (Id.) All subscribers regardless of the kind of account must agree to the Xbox LIVE Terms of Use ("TOUs"). (Id. at 2-3.) Two TOUs matter for this motion. Each is discussed below.

  In October 2012, Microsoft revised the Xbox LIVE TOUs. (Dkt. No. 45-2 at 2.) The first sentence of 2012 TOUs states: "If you live in the United States, section 4 contains a binding arbitration clause and class action waiver. It affects your rights about how to resolve any dispute with Microsoft. Please read it." (Id.) Indeed, the section 4 arbitration and class action waiver provision required:

> If you and Microsoft do not resolve any dispute by informal negotiation or in small claims court, any effort to resolve the dispute will be conducted by binding arbitration. You are giving up the right to litigate (or participate as a party or class member) all disputes in court before a judge or jury.

(Id. at 10) The October 2012 TOUs also contained a class action waiver:

> 4.4. CLASS ACTION WAIVER. Any proceedings to resolve or litigate any dispute in any forum will be conducted solely on an individual basis. Neither you nor Microsoft will seek to have any dispute heard as a class action, private attorney general action, or in any other proceeding in which either party acts or proposes to act in a representative capacity. No arbitration or proceeding will be

combined with another without the prior written consent of all parties to all affected arbitrations or proceedings.

(Id. at 11.)

The October 2012 TOUs broadly defined the term "dispute":

Dispute means any dispute, action, or other controversy between you and Microsoft concerning the Services (including their price) or this agreement, whether in contract, warranty, tort, statute, regulation, ordinance, or any other legal or equitable basis. "Dispute" will be given the broadest possible meaning allowable under law.

(Id. at 10). The only claims excluded from the arbitration provision are "DISPUTES RELATING TO THE ENFORCEMENT OR VALIDITY" of the subscriber's, Microsoft's, or either of their licensors' intellectual property rights. (Id.)

The October 2012 TOUs are presented to users as a "click-wrap agreement." Microsoft represents that subscribers are provided with an opportunity to review the Xbox LIVE TOUs before deciding whether to accept the terms. (Dkt. No. 45 at 2-3.) If a user decides to accept the terms of the Xbox Live TOUs while using their Xbox consoles they click "Accept" on a screen that displays the Xbox Live TOUs. (Id. at 3.) If a subscriber clicks "Decline" or fails to click "Accept" or "Decline," the subscription is not processed and access to Xbox Live is not enabled. (Id.) If the subscriber is accessing the services online, they are presented with the TOUs and a screen and box stating "I accept the Xbox LIVE Terms of Use Agreement," "I accept," or "Cancel." If the latter is clicked the services are not enabled. (Id.)

Ms. Guthrie subscribed to Xbox LIVE's Gold services. (Dkt. No. 45 at 2.) It converted to a Silver account for non-payment. (Id.) Microsoft records show she last signed into her account on November 5, 2012. (Id.) On that date Ms. Guthrie was presented with the new October TOUs and accepted them by clicking an "I accept" or "I accept the Terms of the Use agreement." (Id. at 3.)

ORDER COMPELLING ARBITRATION- 3

1    Mr. Mendoza had an X-Box LIVE paid 12-month Gold membership, which like Ms.
2    Guthrie's, converted into a Silver membership for non-payment. (Id. at 3.) He last logged into
3    his account in September 2012. (Id.) Mr. Mendoza accepted the TOUs that became effective in
4    December 2011. (Id.)

5    By accepting the December 2011 TOUs, Mendoza agreed to resolve any dispute through
6    small claims court, informal means, or arbitration. (Dkt. No. 45-1 at 10.) The TOUs contain
7    prominent and conspicuous arbitration provisions. In the beginning of the December 2011 TOUs,
8    they state in bold capital letters: "IF YOU LIVE IN THE UNITED STATES, SECTION 18.1
9    AND ITS SUBSECTIONS, CONTAIN A BINDING ARBITRATION CLAUSE AND CLASS
10   ACTION WAIVER. THEY AFFECT YOUR RIGHTS CONCERNING THE RESOLUTION
11   OF ANY "DISPUTE" (AS DEFINED IN SECTION 18.1.1) BETWEEN YOU AND
12   MICROSOFT. PLEASE READ IT." (Id. at 2.)

13   The arbitration provision in the December 2011 TOUs' Section 18 explained:

> 18.1. BINDING ARBITRATION AND CLASS ACTION. WAIVER FOR U.S. RESIDENTS*** 18.1.4. BINDING ARBITRATION. IF YOU LIVE IN THE UNITED STATES, YOU AND MICROSOFT AGREE THAT IF YOU AND MICROSOFT DO NOT RESOLVE ANY DISPUTE BY INFORMAL NEGOTIATION UNDER SECTION 18.1.2 ABOVE, ANY EFFORT TO RESOLVE THE DISPUTE WILL BE CONDUCTED EXCLUSIVELY BY BINDING ARBITRATION IN ACCORDANCE WITH THE ARBITRATION PROCEDURES IN SECTION 18.1.7 BELOW. YOU UNDERSTAND AND ACKNOWLEDGE THAT BY AGREEING TO BINDING ARBITRATION, YOU ARE GIVING UP THE RIGHT TO LITIGATE OR PARTICIPATE IN AS A PARTY OR CLASS MEMBER) ALL DISPUTES IN COURT BEFORE A JUDGE OR JURY. INSTEAD, YOU UNDERSTAND AND AGREE THAT ALL DISPUTES WILL BE RESOLVED BEFORE A NEUTRAL ARBITRATOR, WHOSE AWARD (DECISION) WILL BE BINDING AND FINAL, EXCEPT FOR A LIMITED RIGHT OF APPEAL UNDER THE FEDERAL ARBITRATION ACT. ANY COURT WITH JURISDICTION OVER THE PARTIES MAY ENFORCE THE ARBITRATOR'S AWARD.

1  (Id. at 10-11.)  The December 2011 TOUs also contained a class action waiver.  (Id. at
2  11.)  Like the 2012 TOUs, the only claims excluded from the December 2011 arbitration
3  provision relate to "ENFORCING, PROTECTING, OR CONCERNING THE VALIDITY OF
4  ANY OF YOUR OR MICROSOFT'S (OR ANY OF YOUR OR MICROSOFT'S
5  LICENSORS') INTELLECTUAL PROPERTY RIGHTS." (Id.)

6      B.  Procedural Posture

7  This case originated in the Southern District of Texas.  (Dkt. No. 1.)  Microsoft moved to
8  dismiss or in the alternative transfer the case to this District based on the TOUs in place before
9  October 2012.  (Dkt. No. 3.)  The court agreed and found venue was appropriate in the federal
10  court in King County, Washington, as specified by the TOUs.  (Dkt. No. 23 at 2.)

11  Microsoft moves to compel arbitration for Mr. Mendoza and Ms. Guthrie and to stay their
12  claims.  (Dkt. No. 44.)  Ms. Guthrie and Mr. Mendoza counters that Microsoft cannot invoke the
13  arbitration provision because (1) it failed to follow certain procedural requirements in the TOUs,
14  and (2) the arbitration provision is unconscionable and/or illusory.  (Dkt. No. 52.)

15  **Discussion**

16  Under the Federal Arbitration Act, a court's role is "limited to determining (1) whether a
17  valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the
18  dispute at issue."  Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir.
19  2000) (citation omitted).  If the answer to both questions is 'yes,' then "the Act requires the court
20  to enforce the arbitration agreement in accordance with its terms."  Id.  By its own terms, the Act
21  "leaves no place for the exercise of discretion by a district court," instead it mandates "that
22  district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration
23  agreement has been signed."  Id. (citing Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 218
24

1. (1985)) (emphasis in original).  In the Ninth Circuit, "the most minimal indication of the parties'
2. intent to arbitrate must be given full effect ..." Rep. of Nicaragua v. Std. Fruit Co., 937 F.3d 469,
3. 478 (9th Cir. 1991) (citations omitted).
4. However, "the party seeking to enforce an arbitration agreement bears the burden of
5. showing that the agreement exists and that its terms bind the other party." Glow v. Cent. Pac.
6. Mort. Corp., 560 F.Supp.2d 972, 978 (E.D.Cal. 2008).  "This burden is a substantial one[.]" Id.
7. at 979.  "Before a party to a lawsuit can be ordered to arbitrate ..., there should be an express,
8. unequivocal agreement to that effect ... The district court ... should give to the opposing party the
9. benefit of all reasonable doubts and inferences that may arise." Three Valleys Mun. Water Dist.
10. v. E.F. Hutton & Co., 925 F.2d 1136, 1141 (9th Cir. 1991))
11. Next, the Court finds both Ms. Guthrie and Mr. Mendoza agreed to arbitrate their claims by
12. accepting the December 2011 and October 2012 TOUs.  Online agreements are enforceable
13. under both Oregon and Texas law—the states where Guthrie and Mendoza reside—if a
14. consumer has an opportunity to review the terms of the agreement and manifested assent to its
15. terms.  Beard v. PayPal, Inc., 2010 WL 654390, at *1 (D.Or. Feb. 19, 2010)(enforcing online
16. "clickwrap agreement" where  plaintiffs had access to the entire User Agreement on defendant's
17. website and checked box indicating they had read and agreed to it); Rassoli v. Intuit Inc., 2012
18. WL 949400, at *2 (S.D. Tex. Mar. 19, 2012)) ("This court and others have upheld the validity of
19. "clickwrap" agreements.")
20. Next, the Court finds this dispute falls within the arbitration provision.  It is well
21. established "that where the contract contains an arbitration clause, there is a presumption of
22. arbitrability," particularly where the clause is broad.  AT & T Techs., Inc. v. Commc'ns Workers
23. of Am., 475 U.S. 643, 650 (1986).  Indeed, "doubts should be resolved in favor of coverage." Id.
24.

1  (internal quotations omitted).  Here the arbitration provision covers "any dispute, action, or other
2  controversy between you and Microsoft concerning the Services (including their price) or this
3  agreement, whether in contract, warranty, tort, statute, regulation, ordinance, or any other legal
4  or equitable basis." Ms. Guthrie and Mr. Mendoza's claims directly relate to the Xbox LIVE's
5  contract and services as they allege Microsoft improperly retained and disclosed to third-parties
6  information about their accounts.  The Court finds the dispute falls within the broad "dispute"
7  provision of the agreements.

8         Notwithstanding their assent to arbitrate these claims, Ms. Guthrie and Mr. Mendoza
9  argue Microsoft cannot invoke the arbitration clause because it did not follow certain procedural
10 requirements.  First, they argues Microsoft was required to send a "notice of dispute." (Dkt. No.
11 52 at 10.)  This argument turns the agreement's language upside down.  It is Ms. Guthrie and Mr.
12 Mendoza, and not Microsoft, that has a "dispute" to resolve and who were required to outline the
13 facts giving rise to the dispute and what relief they requested.  And even if that were not the case,
14 the Court can find no legal or equitable basis to enforce the procedural requirement where
15 Plaintiffs failed to follow it.

16        In a second line of attack, Ms. Guthrie and Mr. Mendoza argue Microsoft waived the
17 arbitration provision by waiting more than a year to invoke it. (Dkt. No. 52 at 12.)  For such a
18 waiver to occur, there must be: "(1) knowledge of an existing right to compel arbitration; (2) acts
19 inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting
20 from such inconsistent acts." Fisher v. A.G. Becker Paribas Inc., 791 F.2d 691, 694 (9th Cir.
21 1986).  Plaintiff's carry a heavy burden to prove waiver of an arbitration provision.  Day v.
22 Microsoft, 2014 WL 243159, at *4 (W.D. Wash. January 22, 2014).  Ms. Guthrie and Mr.
23
24

ORDER COMPELLING ARBITRATION- 7

1 | Mendoza fail to carry this burden because Microsoft moved to compel arbitration promptly after
2 | the case was transferred to the proper forum. (Dkt. Nos. 23, 44.)

3 |     Finally, Ms. Guthrie and Mr. Mendoza attack the enforceability of the TOUS on the
4 | grounds it is unconscionable and/or illusory because Microsoft could opt-out of the arbitration
5 | process for certain types of disputes. (Dkt. No. 52 at 12.) Microsoft is correct in arguing that
6 | under the terms of the TOUs it is the arbitrator and not this Court who resolves those issues.
7 | (Dkt. No. 53.) The TOUs incorporate the AAA Commercial Arbitration rules into their
8 | agreements, which the Ninth Circuit has held constitutes "clear and unmistakable evidence that
9 | the parties agreed to arbitrate arbitrability." Oracle Am., Inc. v. Myriad Grp. A.G., 724 F.3d
10 | 1069, 1074 (9th Cir. 2013). Delegation of arbitrability to the arbitrator includes the sort of
11 | enforceability arguments that Ms. Guthrie and Mr. Mendoza make. See Madrigal v. AT&T
12 | Wireless Servs., Inc., 2010 WL 5343299 (E.D. Cal. 2010). Ms. Guthrie and Mr. Mendoza
13 | delegated these issues to the arbitrator and as such, this is the improper forum to decide them.

14 | **Conclusion**

15 |     The Court GRANTS the motion. It finds Ms. Guthrie and Mr. Mendoza agreed to
16 | arbitrate her claims and those claims fall within the scope of the arbitration provision in the
17 | December 2011 and October 2012 TOUs. The Court also finds the parties inclusion of the AAA
18 | into the TOUs clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.
19 | Ms. Guthrie and Mr. Mendoza's challenges to the enforceability of the agreement are to be
20 | decided by the arbitrator. The Court also STAYS the matter for a period of 6 months or until
21 | arbitration is complete, whichever comes first, so that Plaintiffs can pursue their claims in
22 | arbitration. The parties are ORDERED to provide a status report to the Court regarding
23 | arbitration by March 10, 2015.

24 |

1    The clerk is ordered to provide copies of this order to all counsel.

2    Dated this 11th day of September, 2014.

*[signature]*

Marsha J. Pechman
Chief United States District Judge